455 So.2d 1097 (1984)
Worthy WATSON, Appellant,
v.
FREEMAN DECORATING CO. and Hartford Insurance Group, Appellees.
No. AW-350.
District Court of Appeal of Florida, First District.
September 17, 1984.
*1098 Ronald B. Gilbert, Miami, for appellant.
Mark L. Zientz of Williams & Zientz, Coral Gables, for appellees.
PER CURIAM.
In this workers' compensation proceeding the deputy commissioner denied payment of claimant's hospital and doctor bills, finding no good cause shown for the failure to file reports timely as required by Section 440.13(1), Florida Statutes (1981). We reverse.
On October 5, 1981, claimant was working as a warehouseman for Freeman Decorating Company. As claimant stacked tables, he experienced chest pains and stopped working. After resting a few minutes, he reported the incident to his foreman. The foreman told claimant to go to the hospital to have his pains checked, and directed one of the truck drivers to drive claimant to the hospital. Claimant testified that the decision to go to Palmetto General Hospital was not his  nor could he recall whether the foreman expressly directed that he be taken to Palmetto General. Dr. Suarez-Pupo, a specialist in internal medicine and cardiology, was covering the emergency room when claimant was brought in with complaints of pain from the low chest area up to the mid anterior chest. Claimant told Dr. Suarez-Pupo that he had been *1099 lifting items at work. On receipt of this information, Dr. Suarez-Pupo ordered a complete series of tests to rule out the possibility of a heart attack. Dr. Suarez-Pupo testified that he performed no tests that were not indicated by claimant's symptoms and the history presented by claimant when he was admitted. Claimant's industrial injury was diagnosed as muscle strain which produced chest pain from the chest wall. Claimant was admitted to the hospital on October 5, 1981, and was discharged on October 7, 1981. On October 6, claimant called his foreman and told him in general terms about the care he was receiving. Claimant's hospital discharge was on a Thursday, and he returned to work the following Monday.
On October 22, 1981, Dr. Suarez-Pupo submitted a bill for his services. The employer/carrier controverted on the ground that Dr. Suarez-Pupo had not complied with the reporting requirement of Section 440.13(1). Two to three weeks after claimant's discharge, he received a statement from the hospital. This statement was dated October 10, 1981. Claimant took the statement to the person at Freeman Decorating Company, employer, charged with the responsibility of processing insurance forms, and was told by her that the appropriate forms would be filled out. After claimant received a letter from the carrier advising that the carrier would not pay the hospital bill, claimant filled out the forms and filed for payment himself. The deputy commissioner found that claimant had suffered a compensable injury but denied payment of the medical bills on the grounds that the medical services were provided without the knowledge or authorization of the employer/carrier, and neither the doctor nor the hospital complied with the reporting requirement of Section 440.13(1), with which no good cause shown for failure to so comply.
The employer/carrier argue that the statute relieves them of the obligation to pay the bill of the health care providers because they failed to file timely reports with the employer. The consequences of sustaining the employer/carrier's position would, paradoxically, place the obligation on the injured worker to pay for medical expenses sustained by him as a result of an industrial injury, notwithstanding his lack of control over the treating physician's tardy conduct.
The legislature, however, has recognized the harshness of what might result if an inflexible rule were applied in all cases disallowing the payment of medical bills caused by a technical violation of the statute. Section 440.13(1) further provides that the deputy may excuse for good cause the failure of the physician to furnish the report during the period involved. We must now determine whether good cause was established to excuse such failure.
We note at the outset that we reject the deputy commissioner's finding that Palmetto General Hospital failed to comply with the reporting requirement of Section 440.13(1). A hospital representative testified that the billing code indicated the statement was mailed in the ordinary course of business. The record reflects the statement is dated October 10, 1981, which places it within the ten-day statutory reporting period. There is a general presumption that the ordinary course of business has been followed, absent a showing to the contrary. Brown v. Giffen Industries, Inc., 281 So.2d 897 (Fla. 1973); Milros-Sans Souci, Inc. v. Dade County, 296 So.2d 545, 548 (Fla. 3d DCA 1974). The employer/carrier here offered no such contrary showing.
In the case at bar, there are two possible explanations for Dr. Suarez-Pupo's failure to timely file reports as required by Section 440.13(1). First, Dr. Suarez-Pupo testified that this case was his first experience with workers' compensation claims and billing. Second, there was some confusion on Dr. Suarez-Pupo's part over where he should send his bill. On October 22, 1981, Dr. Suarez-Pupo billed Bankers Insurance for medical services rendered to claimant, rather than the carrier, Hartford. No explanation was advanced that would explain why the doctor sent his bill to the *1100 wrong insurer. However, failure to timely file Section 440.13(1) reports has been excused when the record demonstrates confusion on the part of physicians over where they should send their bills, and the carrier was not hindered in evaluation of the claim by the absence of prompt formal reports. Florida Sod Co. v. Myers, 432 So.2d 645 (Fla. 1st DCA 1983). Ordinarily, the reason advanced by the health care provider is the most relevant evidence in reaching a decision as to whether or not good cause applies. See, e.g., Jack Eckerd Corp. v. Coker, 411 So.2d 1026, 1028 (Fla. 1st DCA 1982); Walt Disney World v. Schiebel, 414 So.2d 602, 603 (Fla. 1st DCA 1982); Cedars of Lebanon Health Care v. Summerset, 409 So.2d 185 (Fla. 1st DCA 1982); Vannice Construction Co. v. Silverman, 419 So.2d 369 (Fla. 1st DCA 1982). Other cases, however, consider the conduct of the employer as the more determinative evidence in resolving a good cause question. See, e.g., Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982); Commercial Carrier Corp. v. Fox, 400 So.2d 154 (Fla. 1st DCA 1981).
Because the cases have not clearly defined which party bears the burden of establishing good cause, we think it first necessary to resolve that question. As was observed by the Florida Supreme Court in Corporate Group Service, Inc. v. Lymberis, 146 So.2d 745, 747 (Fla. 1962), the statute itself "is silent about the manner in which and the person by whom the [good cause] showing should be made." Nevertheless, we conclude, because the burden is upon the claimant to establish his injury and the causal connection between the injury and the employment, Martin v. Board of County Commissioners, 79 So.2d 513 (Fla. 1955), that any claim requesting the payment of medical expenses necessarily places the burden on claimant to show a good cause excuse, if such becomes an issue. See St. Francis Hospital, Inc. v. Feinberg, 192 So.2d 753 (Fla. 1966). The type of evidence necessary to meet the burden may vary in a given case. Thus, in certain cases, the claimant may satisfy his burden simply by presenting evidence of an employer's pattern of conduct which may be so incongruent with its reliance upon a reporting violation as to be considered a waiver of such defense. Professor Alpert has noted the inconsistency in the early supreme court decisions on the subject, observing that one is left in doubt as to whether they are applying the principle of excuse for good cause or waiver. Alpert, Florida Workmen's Compensation Law, § 17-16, at 631 (3d ed. 1978).
Drawing a distinction between the two terms is, however, an exercise in which we need not indulge. We consider that the concept of waiver has since been subsumed within that of good cause; that it is now a species of excusal for good cause. This conclusion we think is made evident from the Florida Supreme Court's opinion in Torres v. Eden Roc Hotel, 238 So.2d 639, 643 (Fla. 1970), in which the court observed:
[S]ince there is inherent harshness and risk of injustice in a rule which denies recovery to a merited claim on failure to meet a procedural time limit, there is a "good cause" provision which is intended to allow recovery of equitable claims, even if not filed in time, within the discretion of the Commission, subject to judicial review. For good cause, the Court should not enforce the ten-day limitation. For example, inability to file, waiver or conduct by the employer, may support a finding of good cause to waive the ten-day requirement. Actual knowledge is an important element of waiver.
The Torres decision is significant in several respects. First, it identifies the reasons for section 440.13(1)'s reporting provisions (to notify the employer in order to avoid the risks of inflated bills or treatment which duplicates treatment already made available, and to bring such treatment properly within the machinery of the workers' compensation program). Second, it demonstrates certain examples which may support a good cause finding excusing the necessity to report, such as a claimant's inability to file, or conduct by the employer tantamount to waiver. Not insignificantly, *1101 the court observed that an employer's "[a]ctual knowledge is an important element of waiver." The principle of waiver was often applied by early Florida Supreme Court decisions as a means of excusing the health care provider's failure to file reports timely. The cases all reflect a recurring theme: the employer's knowledge of the claimant's condition and of the fact that benefits were being provided by a specific health care provider; its acquiescence in the treatment, and its disavowal of its responsibility to furnish medical benefits because of a violation of the reporting provisions. See, e.g., Foster v. Cooper, 143 Fla. 493, 197 So. 117, 118 (1940); Consolidated Growers Association v. Kruse, 159 Fla. 405, 31 So.2d 545 (1947); Geiger Distributors, Inc. v. Snow, 186 So.2d 507, 509 (Fla. 1966). Those opinions suggest that when a claimant presents evidence revealing the employer's inconsistent conduct, the employer must demonstrate how it was prejudiced by the reporting failure; that prejudice is not presumed because the employer had the ability to obtain, if it wished, any material information concerning the employee's condition.
The case before us is on point with the cases finding waiver as a basis for excusing timely reporting. Here, the employer clearly had knowledge of the claimant's condition. The employer knew that benefits were being provided by Palmetto General Hospital and its staff. The employer acquiesced in the treatment and the employer disavowed responsibility to furnish medical benefits because of a reporting violation. Not explicitly articulated, but clearly intimated in cases involving waiver, is the same principle expressed in those cases sustaining bad faith attorney fee awards: an obligation imposed by law upon the employer to place benefits in the hands of the injured worker, and a breach of that obligation by the employer despite its knowledge of the employee's continuing need for the same. See Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981); Holiday Care Center v. Scriven, 418 So.2d 322, 327 (Fla. 1st DCA 1982).
We therefore conclude that a claimant satisfies his burden of establishing a good cause excuse for a health care provider's failure to honor section 440.13's reporting requirements when under such circumstances as this case, he has presented evidence disclosing that the employer has conducted itself so inconsistently as to have waived its right to rely on those requirements as a defense to the claim. Waiver may occur here because the employer, after having actual knowledge of both the injury and the care provided, breaches its obligations to compensate the health care providers for the treatment of the injured worker. Under such circumstances, the claimant satisfies his burden, and he need not present further evidence on the question of whether the reason offered by the health care provider's failure to file timely reports was for good cause.
The denial of payment of claimant's hospital and doctor bills is reversed and remanded to the deputy commissioner with instructions to order the payment of those bills.
ERVIN, C.J., and JOANOS and NIMMONS, JJ., concur.